## JAMES FRANK WILSON *v.* CLARA RAY WILSON.

*Husband and Wife—Bill for Alimony—Desertion by Husband —Refusal of Communication.*

When the allegations of a bill are sufficient to support a divorce either *a mensa et thoro* or *a vinculo matrimonii,* they are sufficient to support a bill for alimony alone.          p. 635

Md.]

Alimony granted a wife, on account of her desertion by her husband, in the sum of $1,050, approximately one-third of the husband's income, *held* proper, the wife having an income of $300 and the only children being married daughters.      p. 636

Evidence that the husband had not communicated with the wife for over five years, that he came to their home for a few hours at night only, that he furnished nothing for the wife's support, nor any fuel for the home, and that, after the wife left the home on account of lack of fuel and companionship, it was locked and barred against her entrance, *held* to show desertion by the husband, justifying an award of alimony.      pp. 636-640

That the wife, in according to the husband his marital rights, is cold and indifferent, and that she fails to exhibit demonstrative affection, is not a ground for divorce, or justification for his desertion of her, and refusal to furnish support.      p. 640

*Decided March 23rd, 1927.*

Appeal from the Circuit Court for Montgomery County, In Equity (WORTHINGTON, J.).

Bill by Clara Ray Wilson against James Frank Wilson. From a decree awarding permanent alimony to plaintiff as prayed, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Leo Weinberg,* for the appellant.

*Albert M. Bouic,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The bill in this case was filed on August 6th, 1923, in the Circuit Court for Montgomery County, by the appellee against her husband, the appellant, praying for separate maintenance and support, temporary alimony, and counsel fees. It alleges that the parties were married in June, 1892;

that three children were born to the marriage, all of whom are of full age; that although the conduct of the plaintiff toward her husband has always been kind and affectionate and above reproach, her husband without any just cause or reason abandoned and deserted her, and has declared his intention to live with her no longer; that such desertion has continued uninterruptedly since at least the spring of 1921; that the annual income of the plaintiff amounts to approximately $300 a year, represented by the net rentals derived from improved real estate owned by her in Washington, D. C.; that said real estate is worth about $8,000 and is subject to a mortgage of $4,000; that the plaintiff has expended all the rest of her estate derived from her father in the education of the children, improvements of the Kensington home, the title to which is held by the defendant, and in her maintenance and support, the defendant having contributed nothing towards her support since October, 1920; that the defendant is the owner of eighteen or nineteen houses in the city of Washington, which he acquired from his father, and which were in the year 1902 valued at $50,000; that since that time the said property has greatly increased in value; that in addition to the city property the defendant is the owner of ten acres with improvements located in Kensington, Montgomery County, of the value of $15,000; that the net income derived by the defendant will amount to between $400 and $600 per month.

On August 6th, 1923, the court passed an order *nisi* upon the defendant to show cause why he should not be required to pay to the plaintiff such sum or sums of money as may be ordered as alimony *pendente lite,* together with a reasonable sum of money as counsel fee for her solicitor. Subsequently the defendant filed an answer denying the allegations of the bill, and filed a cross-bill praying for an absolute divorce on the ground of desertion of him by the appellee. Shortly thereafter the appellee answered the cross-bill, denying all of its material allegations, particularly denying her desertion of the appellant, and alleging to the contrary that her

husband deserted her on the day named in her bill of complaint in the manner therein set forth. Testimony as to the financial condition of the parties was taken, and on February 2nd, 1924, the court found that the net annual income of the appellant was a sum between $1,800, as claimed by him, and $3,500, as claimed by the appellee, and passed an order requiring the payment of $80 per month as alimony *pendente lite,* and $150 counsel fee. Thereafter testimony was taken in open court, and the chancellor found that the allegations of the plaintiff were sustained by the evidence, and on the 16th day of August, 1926, passed a decree that the defendant, James Frank Wilson, pay the plaintiff, Clara Ray Wilson, the sum of $87.50 per month for permanent alimony, accounting from the 8th day of August, 1926, subject to the further order of the court, and that the defendant pay the costs of the proceedings. From this decree an appeal was entered on September 14th, 1926. Shortly thereafter the appellee filed a petition reciting that an appeal had been taken, and praying for such sum of money to employ counsel to defend said appeal as to the court might seem right and proper in the premises. After an order *nisi* on this petition, and answer thereto, a hearing was had on the question as to the proper allowance of the fee, the court thereafter passing an order allowing the sum of $250 as a suitable counsel fee for defending the appeal from the final decree of the lower court. From this order there was also an appeal taken.

The law controlling cases of this description is so well settled, and has been so many times repeated by this Court, that it would be superfluous to discuss it at length. It is enough to say that when the allegations of a bill are sufficient to support either a divorce *a mensa et thoro* or *a vinculo matrimonii,* they are sufficient to support a bill for alimony alone. *Outlaw v. Outlaw,* 118 Md. 502; *Hood v. Hood,* 138 Md. 360; *Polley v. Polley,* 128 Md. 63; *Hoffhines v. Hoffhines,* 146 Md. 350. The allegations of the bill of complaint in this case charge desertion of the wife by the husband, which constitutes a ground for divorce *a mensa et*

*thoro,* and, therefore, if substantiated by proof, is sufficient to support a decree for permanent alimony. The chancellor awarded permanent alimony of $87.50 per month, subject to the future order of the court.

Much testimony was taken before the chancellor as to the property and income of the defendant, resulting at the time of the final decree in a finding by the chancellor that the defendant's net cash income was between $2,500 and $3,000 a year, and that, in addition, he had the benefit of the property at Kensington, Montgomery County, valued at $15,000, from which he could derive an annual net income of $500. The testimony fully substantiates this finding, and, further, that the income is derived, not from the personal exertions of the defendant, but from rentals of real estate, the value of which is variously testified to be from $100,000 to $125,-000, the assessed value of the real estate in Washington City being $66,000. The defendant has no one but his wife dependent upon him, the three children born to the marriage being three daughters, all grown and married. The wife has a small income from property inherited by her from her father, the net amount of which is approximately $300. Under such conditions, we are of the opinion that the sum of $1,050, approximately one-third of the husband's net income, is a reasonable and just allowance.

The remaining question upon which the decision in this case must depend is the allegation of the wife that the appellant deserted her and failed to provide for her support and maintenance. The answer to this question requires an examination of the testimony to ascertain whether there has been such desertion as the law recognizes as a ground for divorce, without which there can be no valid decree for maintenance and support. The testimony of the appellee as to desertion is clear and convincing, and it is corroborated by every witness who testified upon this point, with the single exception of the appellant. In respect to his testimony, we find no serious contradiction of the appellee on the essential circumstances constituting desertion; and in practically every in-

stance where his testimony is directed to a fact testified by the appellee, it corroborates her statement. The testimony is that the husband is now sixty-six years old and his wife sixty-four; that they were married in 1892, and there have been born to the marriage three daughters, all adults and married; that during the wedding trip the husband laid down certain rules as a course of conduct to be followed by his wife, among which were, that she was never to go in his pockets, was never to open any of his letters, was not to engage in conversation after they retired to their bedroom for the night, and that he was to have one night a week for recreation. The above is indicative of the attitude of the appellant at the beginning of his married life, and it is testified by the wife, and not denied, that she lived up to the conditions imposed. **That after the marriage** the parties lived in the District of Columbia in property furnished by the appellant's father, and which he afterwards inherited. This continued until 1908, when they moved to Kensington, Montgomery County. That shortly after their marriage, and while they were living in Washington, the appellant occupied a separate room, saying, "he felt he could not attend to his work unless he had a room and bed to himself." That from the marriage until 1918 the appellant would frequently, with no explained reason, cease speaking to his wife for periods of from two days to two weeks. That on June 3rd, 1918, he stopped speaking, and since that time has never communicated in any way with his wife. Shortly after that date he began staying away from his home at Kensington, gradually ceasing to take his meals and finally never going there until the family were in bed, and leaving about six o'clock in the morning. That from time to time one or more of the appellee's sisters and brothers stayed at the Kensington home, always upon the invitation of the appellant and with his approbation and consent. That the appellee's sister Elma and brother Gordon lived at the home from June, 1918, until October, 1920, paying board and assisting in the housework, and running the farm of ten acres. That in October,

1920, the brother, expecting to get married, and the sister being about to leave, and no preparation being made for the winter, in respect to fuel and other matters, and at which time the appellant was spending eighteen hours a day away from home and having no communication with his wife and furnishing nothing for her support, she was compelled to leave the home and go to a sister in the District of Columbia. Before leaving, she wrote the following letters:

"Kensington, Maryland,
"August 12th, 1920.

"My Dear Frank:

"As Elma is arranging to go to town this fall, and Gordon does not expect to stay here—and after my experience last winter, I cannot remain here alone. I see no plan but to stay with Elma during the winter months. Of course, this place will remain my home, and I will have to have a stated income, if you feel you cannot discuss this with me, I am willing to do so with any business man we may agree upon. Naturally, any place I may be will be considered your home also. I hope you will consider this and let me know your wishes.

"I am, as ever,

"Clara R. Wilson."

"Kensington, Maryland,
"September 22, 1920.

"My Dear Frank:

"Gordon and Elma will take apartments from Annie for the winter—other plans having failed. This house will have to be closed on account of fuel and no one to stay with me. I can go to Annie's also and a room for you. It will be necessary for me to have a monthly income for my expenses and Anna's. I shall try to stay here as long as the weather permits or until Gordon leaves. I have tried to let you know as far ahead as I can in case you have any plans. Of

course, I expect to return here some time in April. I can only take your silence for consent.

"As ever,

"Clara R. Wilson."

"Kensington, Maryland,
"October 21st, 1920.

"My Dear Frank:

"Your silence tells me you agreed to my letter of September 22—you have offered no plan for my care. I shall stay where I can, making Annie's my temporary home for the present, as I am too nervous to remain alone. You have not spoken to me since June 3rd, 1918, and I do not know why. * * * I owe the Kensington Bank $250.00 borrowed last January for Virginia's wedding. I have made an effort to keep up a standard of living suitable to your position, with no financial help from you—beyond necessary household expenses since we came to Kensington. I now ask you for the first time to allow me an income. I am glad your health has become so much better; I hear constantly of how well you look. I have had the house locked as well as I can, also the outside. I shall come here every few days to look after things and hope you will arrange to live more comfortably than you do here sleeping only a few hours at night. Will you attend to turning off the water, lights and telephone or shall I? If I do not hear from you I shall do so, for I cannot live here before April, and then only with companionship and help. I will gladly take counsel with you at any time. My life has been my family and household, and to be divided is a great sorrow to me. I have given this my constant thought and can see no other way. It will always remain with you to decide the future, by direct communication with me.

"As ever,

"Clara."

After leaving, she continued to communicate by letter at intervals of a week or two, and frequently visit the home in

Kensington, up to the time she found it locked and barred against her entrance. In January, 1921, the appellee visited the appellant's stepmother in Florida, first notifying him of that intention and her purpose to return in April, 1921. The appellee continued to write letters of similar import to those herein set forth until April, 1923. Not receiving any reply or communication of any description from her husband, and not receiving anything for support or maintenance, her bill of complaint was filed in August, 1923. The testimony covers over two hundred pages, with substantially no dispute as to its correctness. While we have carefully examined the whole of it, that above cited is a substantial résumé on the question of desertion. It shows clearly such desertion as the law recognizes as a valid ground for divorce. *Buckner v. Buckner,* 118 Md. 101; *Etheridge v. Etheridge,* 120 Md. 11; *Walker v. Walker,* 125 Md. 649; *Polley v. Polley, supra; Klein v. Klein,* 146 Md. 27. We therefore concur in the learned chancellor's view on this point. While, as stated, the appellant virtually concedes the desertion, he contends that the wife's conduct was such as to compel him to leave home and refuse to support her, constituting, in law, desertion of him by her. We find no force whatever in this contention. There is no evidence of any refusal on the part of the wife of the husband's marital rights; but he contends that in according him these rights she was cold and indifferent, and neglected to exhibit that degree of demonstrative affection which he craved. The law of this state does not recognize this as being a ground for divorce, or as justifying a husband's desertion of and refusal to maintain and support his wife. Applications for divorce are all too frequent, the grounds in many cases being of the most unsubstantial nature. This is a growing evil, and unless the courts require full and strict proof of the recognized causes of divorce, they will become even more prevalent. This record discloses an unusual and unfortunate situation. Husband and wife, persons of high standing, refinement and culture, nearly sixty-five years old, married more than thirty years,

rearing three daughters to maturity and marriage, in their declining years, for no legal cause but simply from slight real or fancied grievances, now come into court, with the attendant publicity, and the chancellor is compelled to require the husband to make suitable provision from his ample means for the support of his wife. The court reserved control over the decree for alimony; and it is to be hoped that the parties may yet effect a reconciliation which would remedy this pitiable condition.

*Decree affirmed, with costs to the appellee.*