# PEARL WISE *v.* SAMUEL WISE.

[Nos. 15, 16, October Term, 1930.]

*Decided November 18th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Simon Silverberg* and *Grace Gerber Silverberg,* for the appellant.

*Edwin T. Dickerson* and *Solomon Hirschhorn,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant, in January, 1928, sued her husband, the appellee, for separate maintenance, charging that he had often treated her with brutality and cruelty, and that, shortly before the suit, he had compelled her to leave their home under a threat of forcible ejectment. The appellee's answer denied the accusations contained in his wife's bill of complaint, and he filed a cross bill, alleging that she had abandoned and deserted him, and praying for a partial divorce on that ground. Upon the testimony produced in the case a decree was passed, on November 18th, 1926, dismissing the cross bill, awarding to the appellant the custody of the two minor children of the parties, and requiring the appellee to pay twelve dollars weekly for the support of his wife and

children, through the Prisoners' Aid Association of Baltimore City. On May 14th, 1929, the appellee sued the appellant for a divorce *a mensa et thoro* upon allegations that he had regularly made the payments directed by the decree in her suit, that she had abandoned him without just cause in January, 1926, and had refused to consider overtures made by him, since the decree, to effect a reconciliation and reunion, and that her attitude constitutes a final and deliberate desertion and abandonment entitling him to a partial divorce. In her answer to the appellee's bill of complaint the appellant averred that the decree in her suit was based upon evidence of the appellee's cruelty, brutality, and desertion, and she denied that he had made any sincere efforts for a reconciliation. The trial of the case resulted in a decree granting the husband a partial divorce, awarding the custody of the children to the wife, as the former decree provided, and directing the husband to pay ten dollars weekly for the children's support.

The evidence in the record on appeal from the second decree does not enable us to concur in the view upon which it was predicated, so far as the divorce is concerned. In our opinion the testimony is insufficient to prove that the appellee's overtures to the appellant were made and refused under such circumstances as to place her in the position of a deserting spouse, notwithstanding the previous adjudication in her favor on the issue of abandonment and cruelty. The decree in her suit for separate maintenance could have been rendered only upon evidence sufficient to sustain her right to a partial divorce, under the pleadings, if that measure of relief had been requested. *Outlaw v. Outlaw,* 118 Md. 498; *Hood v. Hood,* 138 Md. 360; *Polley v. Polley,* 128 Md. 63; *Hoffhines v. Hoffhines,* 146 Md. 356; *Wilson v. Wilson,* 152 Md. 632; *Wiegand v. Wiegand,* 155 Md. 643. The testimony at the former trial was not reproduced in the present case. It may have proved conditions which justify the appellant's unwillingness to resume the marital association. There should be no presumptions against her upon that subject in the absence of evidence tending to qualify the significance of the

judicially ascertained fact that her husband's conduct was responsible for the separation. The determination of the question as to whether the appellant was wrong in her refusal to live again with the appellee depends on the kind and degree of mistreatment to which she was previously subjected. It was incumbent upon him to prove that the causes and circumstances of the separation were not such as to prevent his wife, with due regard to her safety, comfort, and self-respect, from accepting his proposal for a reunion. There was no attempt by the appellee to discharge that important burden. He endeavored merely to prove that he made repeated offers of reconciliation which his wife declined. Even upon that issue the proof is unsatisfactory, in our judgment. It refers to several interviews of third persons with the appellant at her husband's instance with a view to their being reunited, but he made no personal visit or appeal to his wife for that purpose. Two of the three intermediaries testified that their communication of overtures from the appellee to the appellant occurred at periods antedating the decree for alimony. The other representative stated that he interviewed the appellant, at the appellee's request, about a year before the trial of the pending case. His account of the conference was very brief. After stating the fact and time of his visit to the appellant he testified: "I went there and talked to her about making up * * *. She said she was not willing to become reconciled to her husband and return to him as long as he insisted upon living in Baltimore, that if he moved away from Baltimore she would consider going back to him. I asked her the reason. She said the entire trouble between them was due to interference * * * on the part of his family."

The attitude of the appellant was stated as follows in the course of her testimony: "I want to go back to him in a nice way but not the way he treated me before and made me suffer. I don't have any clothes and I don't have any shoes and the children either, and his brother used to make the trouble. He sent me to work, he did not like to work and when I had a baby only two years and six months old I had to leave the home and work * * *" It was testified by the appellant, with-

out contradiction, that her husband had never called to see her since the decree in her alimony suit.

The sixteen-year-old daughter of the parties testified that she visited her father at various times since the former decree and talked with him about the difficulties between him and her mother. "I told him," she said, "whenever I was there— of course, he used to talk about her and I says I wish we could come back and live as other people do, and he said he can't get along with her and he says if he ever wanted to get a divorce, he would get a divorce suit and get a divorce instead of paying her money. * * * He said he could not live with her again." When asked how her father talked about her mother on such occasions the witness said: "Well, he would curse her * * * You know, he would say things any girl don't want to hear about her mother."

While the appellee contradicted the quoted testimony of his daughter, and that of his wife in regard to his conduct prior to the separation, he failed to explain satisfactorily his omission to make a direct appeal to his wife for the resumption of their conjugal relations. It is hard to reconcile his personal aloofness with an earnest desire to accomplish that result. The course which he pursued with respect to the proposed reunion was, in our opinion, insufficient to shift responsibility for the continuance of the separation. His policy seems to have involved no effort to conciliate and reassure his wife by an expression of regret for his past misconduct, which had been judicially determined, and by assurances that he would treat her properly in the future. In the present bill for divorce he renews the charge, heretofore adjudged to be unfounded, that his wife abandoned him in January, 1926, without just cause. There was no expression in his testimony of a wish at the time of the trial to regain his wife's companionship.

The fact that the appellant was willing to live with her husband if he removed from Baltimore is supposed to indicate that their troubles had not been sufficiently serious to prevent a reconciliation, and it is argued that the stated condition was one which she could not reasonably impose. But

an unqualified refusal by her of the indirect and inadequate overtures made in this case would not seem to us so unjustifiable as to convict her of abandonment, and certainly her conditional acceptance should not affect her more unfavorably than a definite declination. It would be difficult, and, on this appeal, it is unnecessary to attempt, to formulate a general rule as to the duties of separated spouses in regard to opportunities for reconciliation after a decree for alimony, as distinguished from a decee for partial divorce, has been rendered. The decision of every such case must be governed by its own facts. Under the special circumstances of the present case we have reached the conclusion that the charge of abandonment preferred against the appellant is not sustainable.

One of the appeals in the record is from an order providing for payment by the appellee of a fee for the services of the appellant's counsel in prosecuting the main appeal, which provision she claims to be insufficient. With that contention we do not agree, and the order will be affirmed.

> *Decree of divorce reversed and bill dismissed, and order as to counsel fee affirmed, the appellee to pay the costs.*