## SARAH ZUKERBERG *v.* SAMUEL ZUKERBERG

[No. 123, October Term, 1946.]

*Decided May 15, 1947.*

*Rehearing denied June 11, 1947.*

430

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Arthur R. Padgett*, with whom were *Samuel J. Aaron* and *Howard L. Aaron* on the brief, for the appellant.

*Eldridge Hood Young* for the appellee.

COLLINS, J., delivered the opinion of the Court.

The parties to this cause, Samuel Zukerberg and Sarah Zukerberg, were married on March 19, 1942. The husband was a widower with five children. The wife had never been married before, was just over forty years of age and had worked for ten years in a printing estab-: lishment. The husband is about two years older than the wife.

Sarah Zukerberg, hereinafter known as appellant, on November 8, 1943, filed a bill for permanent alimony against her husband, Samuel Zukerberg, hereinafter known as appellee, on the grounds of constructive desertion caused by her husband's cruelty. After hearing, Chancellor W. Conwell Smith in Circuit Court No. 2 of Baltimore City on January 11, 1944, passed a decree directing Samuel Zukerberg to pay unto the appellant as alimony the sum of $25 per week for the period of one year from the date of the decree, subject to further order of the Court.

On January 18, 1945, the appellant filed a petition asking that the order of January 11, 1944, for the payment of alimony be extended because the appellee had stopped payments.. After testimony taken, Chancellor Eugene O'Dunne on February 15, 1945, decreed that the appellee pay the appellant as alimony the sum of $20 per week, subject to further order of the Court. On April 11, 1945 an appeal was noted by the appellee from that crder. This appeal was later dismissed by the appellee.

On April 27, 1946 the appellee filed a bill of complaint in Circuit Court No. 2 for Baltimore City against the appellant, alleging that she deserted and abandoned him

on or about the 1st day of November, 1943. He alleged that although the parties had lived separate and apart since that date, he had made repeated efforts and offers of reconciliation in good faith to the appellant, which she had refused. He asked for a divorce *a vinculo matrimonii* and for other and further relief. After hearing on October 26, 1946, Chancellor Michael J. Manley signed a decree granting to the appellee, Samuel Zukerberg, a divorce *a vinculo matrimonii* from the appellant, Sarah Zukerberg. From that decree the appellant, Sarah Zukerberg, appeals to this Court.

Alimony can be awarded by equity courts in this State. Code, Article 16, Section 14, provides: "The courts of equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there."

It is a well-known principle of law that alimony will not be awarded except on grounds which would be sufficient to grant a divorce *a mensa et thoro* or *a vinculo matrimonii*. *Wendel v. Wendel*, 154 Md. 11, 20, 139 A. 573; *Strzegowski v. Strzegowski*, 175 Md. 53, 58, 199 A. 806. A divorce *a mensa et thoro* may be decreed forever, or for a limited time. Code, Article 16, Section 41. Therefore, when Chancellor Smith passed his decree on January 11, 1944, that decree was an adjudication that the appellee had deserted the appellant. Also when Chancellor O'Dunne, on February 15, 1945, extended the order for the payment of alimony, that decree was an adjudication that as of that date the appellee had deserted the appellant. Therefore if the appellant has committed any act which amounts to desertion of her husband, it must have occurred since the passage of Chancellor O'Dunne's decree of February 15, 1945. All questions as to who was responsible for the separation of the parties before February 15, 1945 have been adjudicated in favor of the wife. The Chancellor in the instant case should not have gone behind the decree of Chancellor O'Dunne of February 15, 1945 and the decree of Chan-

cellor Smith of January 11, 1944 to determine who was responsible for this separation up until February 15, 1945. To allow him to do so would in effect allow him to review the decrees of Chancellors Smith and O'Dunne and this cannot be done. *Kruse v. Kruse,* 183 Md. 369, 375, 37 A. 2d 898.

In the case of *Wise v. Wise,* 159 Md. 596, 152 A. 230, the wife sued her husband for separate maintenance charging brutality and cruelty. The husband denied those charges and filed a cross-bill alleging that his wife had abandoned him and praying for a divorce *a mensa et thoro.* The Chancellor dismissed the cross-bill of the husband and required him to pay weekly alimony to his wife. Later the husband sued the wife for a divorce *a mensa et thoro* upon allegations that he had regularly made the payments directed in the prior decree, that she had abandoned him and refused to consider overtures made by him since the former decree to effect a reconciliation and reunion, and that her attitude constituted a final and deliberate desertion and abandonment entitling him to a divorce *a mensa et thoro.* The Chancellor, after hearing the case, granted the husband a partial divorce. This Court, in reversing the decree and dismissing the husband's bill, pointed out that the decree in the former case for separate maintenance could have been rendered only upon evidence sufficient to sustain her right to partial divorce if that measure of relief had been requested. *Outlaw v. Outlaw,* 118 Md. 498, 84 A. 383; *Polley v. Polley,* 128 Md. 60, 63, 97 A. 526; *Wilson v. Wilson,* 152 Md. 632, 137 A. 354. This Court in holding that the testimony was insufficient to prove that the husband's overtures to the wife were made and refused under such circumstances as to place her in the position of a deserting spouse, notwithstanding the previous adjudication in her favor on the issue of abandonment and cruelty, said, 159 Md. at pages 598 and 599, 152 A. at page 231: "The testimony at the former trial was not reproduced in the present case. It may have proved conditions which justify the appellant's unwillingness to resume the mari-

tal association. There should be no presumptions against her upon that subject in the absence of evidence tending to qualify the significance of the judicially ascertained fact that her husband's conduct was responsible for the separation. The determination of the question as to whether the appellant was wrong in her refusal to live again with the appellee depends on the kind and degree of mistreatment to which she was previously subjected. It was incumbent upon him to prove that the causes and circumstances of the separation were not such as to prevent his wife, with due regard to her safety, comfort and self-respect, from accepting his proposal for a reunion." In other words, the testimony in the former case could not subtract from the decree in her favor, which could have been passed only if the wife had proven desertion on the part of the husband in the former case. Although in the instant case the testimony in the two former cases were offered in evidence and are in the record, as in the case of *Wise v. Wise, supra,* the testimony in the cases held before Chancellors Smith and O'Dunne could not subtract from the fact that the decrees in those cases established that the husband was responsible for the separation up until Chancellor O'Dunne's decree of February 15, 1945.

The mere fact that a wife has obtained a divorce *a mensa et thoro* from her husband is not by itself sufficient defense to deny a husband a divorce *a vinculo matrimonii* from the wife, if her actions since the divorce *a mensa et thoro* are sufficient to entitle the husband to a divorce *a vinculo matrimonii. Dicus v. Dicus,* 131 Md. 87, 90, 101 A. 697; *Williams v. Williams,* 156 Md. 10, 142 A. 510.

As was said in the case of *Kirkwood v. Kirkwood,* 165 Md. 547, at pages 551 and 552, 170 A. 180, at page 182: "It is undoubtedly true that, if one spouse leaves the other without cause, as in the present instance, and repents and proposes to renew the cohabitation, and that other refuses, it constitutes desertion by the one refusing from the time of the refusal, provided the offer to return is

made in good faith, and is free from improper qualifications and conditions, and is really intended to be carried out in accordance with the performance of the duties and obligations of the matrimonial cohabitation. *McClees v. McClees,* 162 Md. 70, 74, 75, 158 A. 349; *Simmont v. Simmont,* 160 Md. 422, 432, 153 A. 665; *Wise v. Wise,* 159 Md. 596, 598-600, 152 A. 230." *Pitts v. Pitts,* 181 Md. 182, 190, 29 A. 2d 300.

As it has been adjudicated that the husband was responsible for the separation of the parties up until February 15, 1945 and as the bill of complaint was filed in the instant case on April 27, 1946 and the length of time between these two dates does not amount to eighteen months, the appellee is not entitled to a divorce *a vinculo matrimonii.* Code, 1943 Supplement, Article 16, Section 40.

It is provided by Code, Article 16, Section 41, in part that: "* * * the court may decree a divorce *a mensa et thoro* in cases where a divorce *a vinculo matrimonii* is prayed, if the causes proved be sufficient to entitle the party to the same; * * *." Although the appellee in his brief did not ask for a divorce *a mensa et thoro,* if a divorce *a vinculo matrimonii* could not be granted, he did ask for that relief in his argument in this Court. *Wheeler v. Wheeler,* 101 Md. 427, 436, 61 A. 216. He did, however, in his bill pray for general relief. We must therefore decide whether under the testimony presented in the instant case the husband is entitled to a divorce *a mensa et thoro. Wald v. Wald,* 161 Md. 493, 502, 159 A. 97.

The question, therefore, for our decision is whether the testimony in the instant case is sufficient to show that the husband, after February 15, 1945, in good faith and free from improper qualifications and conditions, repented and proposed to renew the cohabitation with the intention that it would be carried out in accordance with the performance of the duties and obligations of matrimonial cohabitation and, if so, whether the wife refused

to accept such offers and return to her husband, so as to entitle the husband to a divorce *a mensa et thoro*.

The appellee claims that he wrote letters to his wife, called her numerous times on the telephone, went to see her on many occasions, pleaded with her to come back home, intended her to come back, rented an apartment at 1508 Eutaw Place, Baltimore City, and told her if that was not suitable, she could select another apartment. He also claims that he put five hundred dollars in bank in their joint names.

The appellant, on the other hand, claims that her husband sent her scurrilous clippings from newspapers and as late as June, 1945, transferred thirty-two properties to his brother with the intent to keep his wife from sharing in his estate at his death; that when he came to see her he always brought a third party to act as a witness; that his last telephone call was made in September, 1945; that the apartment which he offered her as a home on Eutaw Place is in a most undesirable neighborhood, although he was a man of means and owned a home at 3701 Garrison Avenue, which was in a much better neighborhood and completely furnished with furniture belonging to the appellee and the appellant. In May, 1945 she informed him that it was necessary for her to have a tonsil operation and requested him to pay the doctor's bill. He would not do this and said that she should pay it out of the alimony which he was paying her. Her brother paid this bill.

It does not appear to this Court that the husband was sincere in his offers for reconciliation or that they were made with the intent on his part to perform the duties and obligations of matrimonial cohabitation, and therefore his bill of complaint should be dismissed. He admits that he kept copies of letters which he wrote to her and said he did this because his wife would deny that he ever wrote them. This was hardly the action of a husband who sincerely desired reconciliation with his wife. *Pitts v. Pitts, supra,* 181 Md. at page 187, 29 A. 2d 300. Apparently witnesses were usually present when his offers of

reconciliation were made. On May 1, 1945 he wrote his wife a very affectionate letter, known in the testimony as "The Song of Songs Letter," in which he asked her to come back to him. Yet this was very shortly after he had filed an appeal on April 11, 1945, from Chancellor O'Dunne's decree extending the alimony payments. Another letter was written on June 24, 1946 requesting a reconciliation, but this was written after the bill of complaint in the instant case was filed, and was sent by registered mail. The woman, who had charge of the apartment house on Eutaw Place, testified that the appellee told her that he wanted a divorce. The burden of proof was on the husband and as was said in the case of *Wise v. Wise, supra,* 159 Md. at page 599, 152 A. at page 231, "There was no attempt by the appellee to discharge that important burden. He endeavored merely to prove that he made repeated offers of reconciliation which his wife declined."

Appellant claims that appellee never invited her to go with him to the theatre or motion picture show and never sent her candy or other small presents, although he was well able to do so. From the record in this case it is not surprising that the husband's second courtship of his wife was unsuccessful. We are of opinion that the decree should be reversed and the bill of complaint of the husband dismissed.

*Decree reversed, with costs, and bill of complaint dismissed.*