Crickler v. Crickler.

---

CHARLES D. CRICKLER

*v.*

C. VIRGINIA CRICKLER.

[Filed July 27th, 1899.]

1. Where a separation has been occasioned by cruelty of the husband to the wife to an extent sufficient to support a decree for divorce against him, he cannot successfully claim that her absence from him for over two years thereafter is a statutory desertion.

2. The rights of the parties in such a case are not altered by invitations sent by the husband to the wife asking her to return.

Crickler *v.* Crickler.

3. Irrespective of such a defence, it is the duty of a husband whose wife has separated from him, to show that he has been during the two years, sincerely willing and desirous that she should return to him, else her absence is not obstinate.

On bill for divorce for desertion. Answer and proofs.

*Mr. David J. Pancoast,* for the complainant.

*Mr. Francis D. Weaver* and *Mr. John W. Wescott,* for the defendant.

GREY, V. C.

The parties, Charles D. Crickler and C. Virginia Crickler, were married in November, 1881, in this state, and for thirteen years and more have resided in Cumberland county, New Jersey, and still reside there.

The married life of the parties was unhappy, the wife alleging that the husband was unfaithful to his marriage vows, and that he treated her with great cruelty and harshness.

In May, 1894, an article of agreement between Mr. and Mrs. Crickler and one Samuel Hann, as trustee for Mrs. Crickler, was entered into, wherein it was recited that Mr. and Mrs. Crickler had agreed to live separate from each other; that Mrs. Crickler should take with her their child, Theodosia, about thirteen years of age, and that she should not call upon Mr. Crickler for any other support for herself and her child than was provided by the terms of the agreement. There was a division of the household furniture, and Crickler agreed to pay to Hann, in trust for Mrs. Crickler, $8 a week for her own support and $2 a week for the support of Theodosia, as long as she lived with her mother, during her infancy.

Mr. Crickler further agreed to give a mortgage in the penal sum of $2,500, to Hann, as trustee, conditioned for the performance of his agreement to make the payments above named, the mortgage to cover all the interests of Crickler in the house and lot on Atlantic street and in the machine-shops and lot wherein they are situate, on Atlantic street, in Bridgeton.

Crickler v. Crickler.

Mr. Crickler gave the mortgage, dated May 29th, 1894, provided for by the agreement, and the parties undertook their separate life, Mrs. Crickler taking charge of the little child and assuming the possession of the furniture, which, under the terms of the agreement, she was to have.

The parties have lived apart from the making of this agreement in May, 1894, until the present time. In November, 1895, Mr. Crickler wrote to his wife a letter, in which he said he desired her to return and live with him. To this his wife made no reply. In April, 1896, he wrote her again, stating that he was still anxious that she should return and resume her position as his wife, and that if she did not act as his wife he would stop paying her the allowance. No reply was sent by the wife to this letter. Mr. Crickler then stopped his payments for her support, and some time afterwards filed his petition against her for divorce on the ground of desertion.

This petition was dismissed in September, 1897, because it appeared that Mr. Crickler had, by the agreement, assented to the separation, and that two years had not elapsed since he had requested his wife to return.

In October, 1897, as Mr. Crickler had ceased paying the weekly sums secured by the mortgage, Hann, the trustee, began a foreclosure proceeding in this court to enforce their payment. This suit is defended by Crickler, who contends that the mortgage was obtained from him by a false accusation that he had committed an assault and battery upon his wife, threats that he would be sent to state prison therefor, and an offer to suppress the prosecution if he would give the mortgage, &c., in question. The foreclosure suit has come to an issue, and as the testimony was in many particulars the same as that required in this cause, the two were heard together, upon a stipulation between counsel that all the testimony should, where relevant, be considered as taken in both causes.

In January, 1898, Mr. Crickler filed the new petition for divorce now before this court, upon the ground of desertion by his wife. This suit she defends, justifying her separation and

absence from him because of his cruel and harsh treatment of her and his repeated breaches of his marriage vows.

That the parties were both *bona fide* residents of this state when the bill was exhibited, and that they have been so resident for many years before, is affirmatively shown beyond question.

That Mrs. Crickler willfully lived separately from her husband for the space of more than two years before the filing of the petition in this cause is not disputed, and I think the weight of the proofs shows that she has been during that period of time and is now fully determined not to return to her husband, to resume her wifely duties, unless a change of circumstances takes place, of which there is no present indication.

She claims to justify her absence from him, and her refusal to maintain her marital relations with him, by showing his extreme cruelty to her, so that she was and is afraid to live with him, and also contends that he has been unfaithful to his marriage vows.

The original separation of the parties in April, 1894, was occasioned by Mr. Crickler's violence toward his wife. He was seeking to get possession of a bill which he believed would show that his wife had injudiciously spent his money. He supposed she was trying to hide this bill from him, and becoming enraged, he so violently threw her against a projecting corner that she received injuries which the doctor defines as a bruise on her left side, eight inches long and two inches wide, another at the lower end of her spine and a uterine displacement. In consequence of these injuries she required medical attendance for four weeks, and when moved in the June following, had to be carried in an invalid's chair. Mrs. Crickler gives this account of the affair, and Mr. Crickler denies it, stating that in the struggle she caught hold of his clothes, and his hurried exit may have thrown her down. But his story has no element of probability in itself, is not consistent with his admitted conduct, as he never attempted to aid his wife as any man would naturally help any woman whom he had hurt by misadventure, and it is also inconsistent with the testimony of the woman of the house, who heard Mrs. Crickler scream for help, as if in much distress and fright, and

on coming in found her alone in great suffering as above stated. Mr. Crickler was indicted for this attack, and thereafter the parties lived separate. The agreement for separation and support and the securing mortgage, were then made by Mr. Crickler. He now alleges these were procured from him by threats. This claim is discussed in the opinion in the foreclosure suit of *Hann, Trustee*, v. *Crickler*. It is enough to say here that the proofs show that this charge is entirely false.

He had in the fall of 1893 (six months or more before his attack on his wife, in April, 1894, had resulted in the separation) procured from his own lawyers articles of separation, and had insisted that his wife should sign them, which she refused to do. His conduct tended strongly to show that he wished to force her to a separation. Save for his misconduct she had no reason to desire to live apart. Her material comforts and those of her child, were admittedly far better if they lived together than if apart.

The result of these transactions shows, that Mr. Crickler not only assented to the original separation, but that he actually desired and contrived and gave occasion for it. Under such conditions their separation was no desertion on the part of Mrs. Crickler, and on this ground his first divorce suit was dismissed.

He now claims that his letters of November 14th, 1895, and April 16th, 1896, expressing his desire that his wife should return to him, made it her duty at that time to come back and resume their marital relations, and that her refusal so to do, for two years, is a willful, continued and obstinate desertion.

In order to ascertain the extent of Mrs. Crickler's duty in the premises, a statement of the facts as shown by the weight of the proofs is necessary.

Mr. Crickler testified that his wife is a Christian woman. Her testimony and her appearance on the witness-stand indicate that she desires to tell the truth, and that she has the capacity necessary to perceive and to relate it. She appears to be of delicate physique and in frail health. Her answers to all questions, even those which she might well believe would militate against her, were fairly and frankly given. She narrates an

account of their married life, which shows a series of incidents of ill-treatment, physical violence and abuse on the part of her husband, which culminated in the affair of April, 1894, when she received from him injuries which confined her to her bed for weeks, from which she did not recover for more than two months, leaving her in a condition of terror which occasioned their separation, as she says, because she feared he would take her life. She testifies that she thought it was her duty to preserve her life by staying away from him; that she is willing to return to him if she had any reasonable assurance that he would treat her in a proper manner, but she hesitated to say that she would take his word to that effect, because he had heretofore broken like promises. To several witnesses Mrs. Crickler stated that she would not live with her husband, but when a reason appears it is because he had treated her so badly, &c. Such statements of refusal to renew marital relations, when justified by the truth of the reason stated, are not evidence of willful or obstinate desertion. ·

Mr. Crickler denies all the charges of cruelty to his wife, but it is impossible to accept his statements as true. His daughter testifies that he pulled his wife off the lounge, and, when the daughter threatened to give an alarm, he put his hand over her mouth and told her to be still. The incident of his throwing his wife against a corner and thus causing her serious injury, is established as narrated by Mrs. Crickler, because her statement is in natural accord with the admitted facts, and with the conduct and statements of both at the time, while Mr. Crickler's version is quite improbable, and his action at and immediately following the transaction is wholly inconsistent with his account of it. His eager desire to effect some settlement which would shield him from punishment, shows his consciousness that he had caused his wife's injury. His testimony has in several particulars been flatly contradicted by disinterested witnesses, so that he is discredited. All these go to establish the truth of Mrs. Crickler's narration, and to show that Mr. Crickler had used to his wife such extreme physical violence, that she might reasonably fear, in view of her frail condition (which is now manifest

Crickler *v.* Crickler.

upon looking at her, and proved by several witnesses to have always existed), that her life was in danger. Under such circumstances it was her right and duty to separate from her husband. There is no proof whatever that the husband ever expressed any regret for his cruelty to his wife, or that he gave her any assurances of future safety and considerate treatment.

It is shown that about April or May, 1894, while she was yet ill from the effects of his violence and he was under a criminal charge therefor, he went on his knees to her, as is stated by a witness, begging her to be reconciled and not to break up the home, for the child's sake. How far this was caused by fear of punishment and how much was regret for his own misdoing, does not appear. He is not shown to have given her even a verbal promise of his future better behavior, and while yet suffering from his violence she might well hesitate to listen to invitations which, if accepted, would free him from restraint, and leave her unprotected from a renewal of his cruel treatment. After he was discharged from indictment there was no more begging for a reconciliation.

During nearly four years from April, 1894, until January, 1898, when petition was filed in this case, this husband, who had cruelly abused his wife, never even asked her to return to him save by the two formal letters hereinafter discussed.

The wife narrates several incidents which savor strongly of marital infidelity on the part of the husband. He denies these, but his testimony, having been contradicted by several disinterested witnesses on other points, must be held less credible on this matter, where the secrecy of the transaction might well be deemed by him to afford a safe opportunity to maintain his character by a false statement. In addition to the statements of the wife, it was proven by a hotelkeeper that Crickler had been at his hotel at Ocean City for several days and nights with two different women, neither of whom was Mrs. Crickler, at two different times; that Crickler's room was opposite the room which the women occupied, the doors facing each other. Mr. Crickler paid the bills for each of these women. His conduct was such that it attracted attention and caused the hotelkeeper

28

Crickler *v.* Crickler.

to tell him that he did not want him to come to his house with any more women. Mr. Crickler declares that there was but one occasion when he was at this hotel with a woman, and he denies that his conduct on this occasion was in any way a breach of his marital duty. He declares that he met a lady on the train by chance, and at her request went to the hotel with her, as she had never before been in Ocean City. He explicitly denies that he paid the hotel bills of any lady, &c., and also all improper conduct. The hotelkeeper is, however, a witness who has no interest whatever and is not likely to have been mistaken either as to the payment of the bills or the number of times Crickler had women at his place; and the latter's denial of these clearly-proven facts makes his testimony much less credible when refuting accusations which are usually necessarily proven by inference.

The weight of the proofs having shown that the husband's treatment of his wife was extremely cruel, resulting in her physical disablement, and also that he had probably been unfaithful to his marriage vows, she was justified in separating from him, and to this he appears to have assented. It has been held, however, that where the separation was by mutual consent it would become desertion if the complainant party makes sincere overtures to terminate it (*Hankinson* v. *Hankinson, 6 Stew. Eq. 66*), and it is insisted Mr. Crickler's invitations to his wife asking her to return imposed upon her an obligation to resume their marital relations, so that her failure to accept them for two years was such a desertion as the statute defines to be willful, continued and obstinate.

Mrs. Crickler's testimony shows that Mr. Crickler made no other application to her to return than is exhibited by the two letters of November 14th, 1895, and April 16th, 1896. The letter of April 16th, 1896, if relied upon to terminate the agreed separation and to begin a period of two years during which Mrs. Crickler's continued absence would be willful and obstinate, has no such effect, as Mr. Crickler's petition in the present cause was filed on January 31st, 1898, more than two months before the expiration of two years after the writing of that letter. Though this April letter cannot be of any aid to the petitioner when

Crickler v. Crickler.

relied upon to terminate the agreed separation and to start a period of desertion, it may be used, when taken in connection with Mrs. Crickler's omission to accept its invitation to return, as evidential of her continued and obstinate adherence to a willful purpose to desert her husband, during the period beginning January 31st, 1896, which is two years before the petition in this cause was filed.

As there was no conference between the parties, the only earlier time which is in any way indicated as ending the agreed separation and which might begin a period of willful desertion on the part of Mrs. Crickler, was the date of her receipt of the letter of November 14th, 1895, from Mr. Crickler, which was more than two years before the filing of the petition in this cause. This letter did invite her to return and expressed the belief that if she would do so they might be happy, &c. If the circumstances of the case presented no other question than a mere agreed separation without legal cause or right, this letter, if it sincerely expressed the wishes of the husband and had been supported by conduct towards his wife in accord with its invitations, would have been forceful to cast upon the absent wife the duty to return. But if the offences of the husband had been such as to drive the wife away for some reason which gave her a cause of action for divorce against him, he could not by mere invitation to her to return, put her in the position of a wife who willfully and obstinately deserted her husband, even if she refused to come back. The separation in such case is justified, and in the contemplation of the court is the husband's own desertion and not the wife's. *McVicker* v. *McVicker, 1 Dick. Ch. Rep. 490, 500,* and cases there cited.

The proofs in this case disclose the exercise of extreme cruelty on the part of the husband towards the wife, resulting in severe physical injury to her and creating a condition of fear on her part of further association with him, which the facts show is entirely reasonable.

The proof of the marital infidelity of Mr. Crickler by testimony other than that of his wife is, perhaps, not strong enough to support a decree for divorce upon that ground, but is sug-

gestive of grave suspicions, and in view of the fact that he had assented to her separation from him, this disclosure has weight to show that his invitation to her to return, which he was bound to extend, was not sincere, but was given merely to put her in a false position, and thus excuse him from supporting her.

Irrespective of these serious grounds justifying her refusal to return to her husband, his acts, seeking a reunion, fall far short of what is fairly required of him by the circumstances of this case and his legal duty.

The husband, from the point of view most favorable to him, had certainly so conducted himself that the wife had at least reasonable cause to doubt his faithfulness to his marriage vows. He had so cruelly treated her that she was seriously injured, and with his assent had for that cause separated from him. Under these circumstances (aside from her defence, because of his extreme cruelty, which in my view was sufficient) the husband, in order to make his wife's separation from him a desertion, must, by his conduct, have given her sincere assurances that he desired her to return, and that if she would do so she would not be subjected to the same dangers which she had suffered during her past association with him, which had caused this separation. *Bowlby* v. *Bowlby, 10 C. E. Gr. 406 ;* affirmed on appeal, *Bowlby* v. *Bowlby, 10 C. E. Gr. 570 ; Grant* v. *Grant, 9 Stew. Eq. 502.*

The action of this husband has not even approached the standard of conduct prescribed by these cases. Far from expressing regret for his past cruelty and promising to amend his conduct in the future, he falsely denies that he ever treated his wife cruelly, and attempts to justify his previous actions. The wife is thus plainly notified that if she returns she will receive no better treatment in the future than she has had in the past. The husband, by the cases cited, is required to be in a receptive frame of mind, willing to receive his wife, but this husband has been shown to have been so eager for a separation from his wife that he filed a bill for divorce for her supposed desertion before the statutory time had elapsed. He wrote her the letters inviting her return, and on these invitations bases his claim that her non-return was desertion, and yet in the summer following the

Crickler v. Crickler.

writing of these letters, occurred the discreditable incident of his association with the women at the Ocean City Hotel. His letters were plainly provoked not by any contrition for his past cruelty, by any present regard for his wife or any desire for her return, but by the fact that he was subjected to some pecuniary straits in paying for her support. The phrasing of these letters was obviously intended to put the wife in such a position that she must return to her husband without any expression of regret from him for his past ill-treatment or assurance that in the future she would receive any better, or if she did not return that further support for her and her child might safely be refused. Mr. Crickler is very strenuous in his insistment that he dictated this correspondence himself. While the style of the letters as compared with his literary capacity may lead one to doubt the truth of his statements, his contention is yet quite sufficient to show that he thoroughly approved of the purpose which caused them to be written. They alone, unaccompanied by any reconciliatory acts, do not, under the circumstances of this case, exhibit that sincere desire for the wife's return which is necessary in order to make her desertion obstinate.

Mr. Crickler declares that Mrs. Crickler would not talk to him, but her whole testimony shows that had he approached her in a proper spirit of contrition for his past wrongdoing, assuring her that she would have nothing to fear from him if she returned, he would probably have induced her to resume their marital relations. If his cruelty had caused her to hesitate to grant a personal interview, correspondence was still open to him. He appears to have had no occasion for letter-writing, except in an effort to establish a legal ground for a divorce.

The complainant has failed to show such a case of willful, continuous and obstinate desertion by his wife as entitled him to a decree of divorce. The bill should be dismissed, with costs.