OLIN S. WRIGHT, *Appellant,* v. PALESTINE C. WRIGHT, *Appellee.*

### Opinion Filed April 4, 1921.

1. Where there has been wilful, obstinate and continued. desertion by either the husband or wife for a period of a year, there is no obligation on the part of the deserted spouse thereafter to resume the marital relations, and the refusal to do so does not extinguish the cause of action.

2. The refusal by a deserted spouse to resume marital relations after the obstinate, wilful and continued desertion for a period of a year, does not deprive him or her of the right to a divorce on the grounds of such desertion.

3. Where a husband or wife wilfully and wrongfully deserts the other, the willingness for, or tacit acquiescence in the desertion, on the part of the deserted spouse, will not defeat the cause of action if such wilful desertion is obstinate and continued for the period of a year.

An Appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Decree reversed.

*Martin Carabello* and *William H. Malone,* for Appellant;

*G. B. Wells,* for Appellee.

BROWNE, C. J.—This is an appeal from a decree denying the prayer of the bill for divorce and dismissing the bill. The divorce was sought on the grounds of the wilful, obstinate and continued desertion for period of one year, of Olin S. Wright by his wife, Palestine C. Wright. Dr.

Wright and his wife had lived for many years in a house belonging to Mrs. Wright. In the latter part of April, 1915, Mrs. Wright informed her husband that she was going away and that her house had sheltered him as long as it could, and that he must move out as she wanted to rent it. She told him that he had a room over his office that he could occupy, and he took up his lodging there.

During their married life she frequently told him to move out of her house, but on this occasion it seems she took more care to see that her wishes were complied with by moving out of the house herself, and renting it for a boarding house or hotel. During their married life there was considerable fault finding on the part of the wife, and when her husband would not agree to her wishes or demands she would threaten separation.

Mrs. Wright remained away from Plant City from May, 1915, to January, 1917. She admits that she rented her house and told her husband that he could live over his office where he had plenty of room, and that she left Plant City in May, 1915, but says her reason for leaving him was to keep her children in school. She spent the time that she was away from her husband, in Gainesville, Fla., Atlanta, Ga., Hiddenmight, N. C., Gainesville, Ga., New York City and Atlantic City, N. J. She also admits having told her husband some time prior to her putting him out of the house that she wanted him to get a divorce.

Dr. Wright's testimony is corroborated by other witnesses. Mrs. Evers testified that in April or May, 1915, she rented from Mrs. Wright the house in which they were living at that time. She says she was anxious to secure some boarders and asked Mrs. Wright what was to become of Dr. Wright and his son; to which Mrs. Wright

replied, "she had furnished shelter over their heads long enough and it was time for them to get out." She reserved one room in the house for a son by a former husband. Mrs. Evers testified that she wanted to have Dr. Wright and his son board with her, but that Mrs. Wright said they would get out.

The deputy sheriff who served the subpoena in chancery on Mrs. Wright testified that she asked him what it was for and he told her he supposed it was a divorce proceeding, and that she told him that she had insisted on that for several years. He told her that she would not have to appear in court if she did not want to, if that was the way she felt about it.

The only conclusion to be reached from all the testimony is that for some time prior to Mrs. Wright putting her husband out of the house, she desired a divorce and that she no longer cared to live with him, but as they were living in her house and she could not abandon him without leaving him in possession, she adopted the alternative of putting him out, renting the house, and in order that all semblance of relations between them might be severed, she objected to the party to whom she rented the house, letting her husband remain there even as a boarder.

At the time she left, instead of arranging their affairs so that whenever she returned their marital relations could be easily resumed, she on the contrary took the precaution to see that he was not even permitted to board in their former home, and had him move into a room over his office, which while it might have been an admirable bachelor's apartment, was hardly suitable for a married couple.

An effort is made to show an attempt at reconciliation

on the part of Mrs. Wright, but it came twenty months after the desertion and eight months after the cause of action accrued. Whatever may be the duty of either spouse during the period when the cause of action on the ground of desertion is incubating, there is no obligation upon the part of either, after the desertion has been wilful, obstinate and continued for the period of a year, to resume the marital relations.

The testimony in support of the contention that Mrs. Wright after twenty months absence wanted to resume marital relations with her husband, consists only of a statement by her to her husband that she had gotten the house fixed up and that she was to begin eating there that day, and when he got ready he could come over. This the chancellor properly construed to be only an invitation to dinner, but even if it had been an offer on her part to resume marital relations, it came too late as the desertion had been obstinate, wilful and continued for a year, and after such a desertion the injured party is within his rights if he declines to resume marital relations.

The decree in this case is predicated upon the erroneous doctrine that if a husband or wife deserts the other there must be no willingness or acquiescence in such desertion on the part of the deserted spouse. We know of no such rule and there is nothing in the statute to warrant grafting that doctrine upon it.

A drunken husband may make his wife's life so wretched that his desertion may come as a relief, and it would be a strange and harsh doctrine if in order to procure a divorce on the ground of wilful, obstinate and continued desertion for a year, she would have to establish, in addition to the desertion, the fact that she had grieved her heart out at the loss of her drunken husband.

The frame of mind of the deserted spouse in no way lessens the gravity of the offence of a wilful, obstinate and continued desertion.

We think the evidence sustains the allegations of the bill, and as the question of whether the complainant was pleased or not at his wife's desertion does not affect the issue, the chancellor erred in refusing to grant the divorce and dismissing the bill, and the decree, is therefore, reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.