## HOKEMEYER *v.* HOKEMEYER

[No. 56, October Term, 1949.]

*Decided January 11, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Hyman Ginsberg*, with whom were *Sidney Goldscheider* and *Ginsberg & Ginsberg* on the brief, for the appellant.

*Benjamin L. Freeny* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court No. 2 of Baltimore City dismissing a wife's bill for permanent alimony. The parties were married at Elkton on November 20, 1947, and thereafter made their home in a house which she owned, subject to a mortgage and ground rent, 2232 West Fayette Street. Her married daughter occupied an apartment on the second floor, for which she paid a rent of $35 a month. Mr. Hokemeyer was unemployed, but owned 8 houses in the City from which he derived a gross rental of $60 a week.

Both of the parties are past middle age. The husband is 61, the wife 58 years of age. Each had been previously married. The present marriage seems to have produced quarrels and altercations from its inception. One of her complaints was that he was niggardly in providing funds for the household and medical expenses. He threatened to leave on a number of occasions. On January 25, 1949, he did so, and told her it was final. He had previously moved most of his possessions, and had his clothes packed when the final rift occurred. Several days later he returned for some articles of furniture. Neither on this, nor on any other occasion prior to the trial, did he personally indicate to her any desire to effect a reconciliation. After the separation he contributed nothing to her support. A married son of Mrs. Hokemeyer testified that he gave his mother $10 a week after Mr. Hokemeyer left.

It is clear, of course, that permanent alimony should not be awarded unless the complainant shows grounds sufficient to support a decree of divorce *a mensa et thoro* or *a vinculo matrimonii*. *Zukerberg v. Zukerberg*, 188 Md. 428, 431, 53 A. 2d 20, and cases cited. In the instant case the chancellor found that although the various quarrels and incidents leading to the separation were all of a trivial character, for which both parties were to blame, the husband "left without any reasonable or legal

grounds for having left." He found, however, that the husband had made a bona fide offer of reconciliation, which barred relief to the wife.

On the same day that the husband left he consulted counsel, who forthwith dispatched a letter to the wife stating: "Your husband has been to see me about your marital situation. Will you please stop in to see me at your earliest convenience about the same." The wife ignored the invitation and proceeded to engage counsel of her own. Without commenting upon the propriety of the communication, it could hardly be construed as an offer of reconciliation, but on the contrary, constituted a threat of legal proceedings and was well calculated to widen the existing breach. Moreover, as we have stated, when the husband called to take away certain furniture after the wife had received this letter, he gave no hint that he had changed his mind.

On March 11, 1949, counsel for the husband wrote to counsel for the wife stating that his client "would like very much for Mrs. Hokemeyer to come * * * [to 4670 Kernwood Avenue where he was residing] and live as husband and wife. He makes this offer in absolutely good faith, and if she will inform him when she would like to come over to his house, he will make arrangements for transportation." Mrs. Hokemeyer was informed of this invitation, but "didn't pay any attention to it. * * * He didn't show anything to me to take him back * * * after the way he had treated me." A few days later the bill was filed, alleging desertion, and the tender of March 11th was specifically set up as a defense in the answer.

In the course of the trial, the chancellor asked Mrs. Hokemeyer "why aren't you willing to take him back to start over again?" She replied that she couldn't "try that over again. * * * he never gave me a moment's encouragement." Mr. Hokemeyer testified he left because he could not "stand it any longer. * * * My lawyer asked me if I can't take her back. I said 'yes, I'll take her back to my house, not to hers'." He admitted that he never

made such a suggestion to his wife, either verbally or in writing. He also testified: "she likes her place better because she has been living there longer, since 1928 or 1930 she has been living in her house".

"It is undoubtedly true that, if one spouse leaves the other without cause, as in the present instance, and repents and proposes to renew the cohabitation, and that other refuses, it constitutes desertion by the one refusing from the time of the refusal, provided the offer to return is made in good faith, and is free from improper qualifications and conditions, and is really intended to be carried out in accordance with the performance of the duties and obligations of the matrimonial cohabitation". *Kirkwood v. Kirkwood,* 165 Md. 547, 551, 170 A. 180. The difficulty in the instant case is that we can find in this record no evidence of repentance on the husband's part. On the contrary, the testimony seems to support the view that the tender was merely designed to improve his legal position with reference to his duty of support, without any sincere desire or intention that it be accepted. In view of his studied coldness, we cannot find that the husband's course of conduct was such as to hold out any hope of success, or to place upon her a legal obligation to accept the offer.

In *Wise v. Wise,* 159 Md. 596, 600, 152 A. 230, 232, Judge Urner, speaking for the court, stressed the fact that the husband in that case "failed to explain satisfactorily his omission to make a direct appeal to his wife for the resumption of their conjugal relations. It is hard to reconcile his personal aloofness with an earnest desire to accomplish that result. The course which he pursued with respect to the proposed reunion was, in our opinion, insufficient to shift responsibility for the continuance of the separation. His policy seems to have involved no effort to conciliate and reassure his wife by an expression of regret for his past misconduct, which had been judicially determined, and by assurances that he would treat her properly in the future." And in *Zukerberg v. Zukerberg,* 188 Md. 428, 53 A. 2d at page

24, a case strikingly similar on the facts, we said, speaking through Judge Collins: "From the record in this case it is not surprising that the husband's second courtship of his wife was unsuccessful." In that case we found it necessary to reverse the decision of the chancellor.

We have repeatedly said that the findings of the chancellor, who sees and hears the witnesses, are entitled to great weight, particularly where the issue is one of veracity. We have no inclination to depart from that salutary rule. But in the instant case the facts are virtually undisputed, and the decision seems to have been predicated upon a misconception of the evidentiary weight of a formal legal tender in a field of the law concerned with the most intimate of human relations. We think the husband has not sustained the "important burden" of shifting responsibility for the continuance of the separation. *Wise v. Wise, supra.* Accordingly, we shall reverse the decree and remand the case for a determination by the chancellor of a proper allowance of alimony, in the light of the financial situation of the parties.

*Decree reversed and case remanded, with costs.*