# HITE *v.* HITE

[No. 231, October Term, 1955.]

*Decided July 13, 1956.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, HENDERSON and HAMMOND, JJ.

*Thomas Lohr Richards* and *H. G. Shores* for appellant.

*William H. Geppert,* with whom were *Gunter & Geppert* and *Clarence E. Martin, Jr.,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

James L. Hite, a resident of Cumberland, brought this suit in the Circuit Court for Allegany County to obtain a divorce *a vinculo matrimonii* from his wife, Audrey M. Hite, a resident of Martinsburg, West Virginia.

The parties were married in Frederick in June, 1931. For nearly 18 years they lived together in an apartment in Martinsburg. During that time complainant was employed as a conductor on the Baltimore and Ohio Railroad between Brunswick and Cumberland. In 1948 defendant heard that her husband had been intimate with a woman named Charlotte Worgan. Defendant testified that in 1949 she found in her husband's pocket a photograph of Miss Worgan. She further testified: "I asked him why he had this picture in his pocket, and he told me that he had taken it from another married man,

* * * and that he was going home and he didn't want his wife to see this picture, and he had given it to him to carry in his pocket until the man came back from his home. * * * He told me if I would go and get that picture that he would promise that he would treat me just the same as he used to treat me. * * * And before I could even hand it to him, he grabbed it and tore it up."

On March 17, 1949, complainant abandoned his wife and has never lived with her since. This is the third divorce suit he has filed against his wife.

The first suit was filed in August, 1949, in the Circuit Court of Berkeley County, West Virginia. In that case complainant charged his wife with cruel and inhuman treatment. His wife filed an answer denying the charges and a cross-bill charging that he had committed adultery with Miss Worgan and praying for separate maintenance. At the trial of that case taxicab drivers testified that they had driven complainant from Keyser, West Virginia, the end of his run, to Miss Worgan's home at Luke, Maryland. On May 27, 1950, Judge Decatur H. Rodgers, of the Twenty-third Judicial Circuit of West Virginia, who heard the case, held (1) that the evidence was insufficient to prove complainant's charge that his wife was guilty of cruel and inhuman treatment, and (2) that complainant had deserted his wife without just cause. In West Virginia a court of equity may, independently of a suit for divorce, decree separate maintenance for a wife who has been deserted by her husband. *Lang v. Lang*, 70 W. Va. 205, 73 S. E. 716. The Court ordered complainant to pay to his wife the sum of $100 per month for her maintenance. The award was subsequently reduced to $75 per month.

The second suit was filed on April 28, 1951, in the Circuit Court for Frederick County, Maryland, complainant having moved from Martinsburg to Brunswick in October, 1950. In that case he asked only for a divorce *a mensa et thoro*. He moved from Brunswick to Cumberland in January, 1954. On June 20, 1955, the Court, acting on his petition, dismissed the bill.

The present suit was filed on July 19, 1955. In this bill complainant alleged: (1) that defendant had refused his

offer of reconciliation, and therefore she was guilty of desertion, and her desertion had continued uninterruptedly for more than 18 months; and (2) that he and his wife had been voluntarily living separate and apart for more than three years, and the separation was beyond any reasonable expectation of reconciliation.

At the trial of the case it appeared that in October, 1950, complainant asked Judge Rodgers for his advice. The judge advised him "to recourt his wife and make a reconciliation." On November 2, 1950, defendant found that someone had been in her apartment during her absence, and she suspected it was her husband, as he still had a key to the apartment. She stayed with a neighbor for the next three nights until she had a padlock put on her door. On the morning of November 6, 1950, complainant came to the apartment, but the door was padlocked, and no one answered the doorbell. Later that day, when he arrived again and rang the bell, his wife telephoned for the police. When a policeman arrived, she ordered him to take her husband away. The policeman took him to Judge Rodgers' office in the courthouse. Complainant asked the judge, "What am I to do now?" The judge advised him, "If she will not become reconciled with you, there is nothing you can do."

On November 29, 1950, complainant sent his wife a registered letter informing her that he had rented a house in Brunswick and he wanted her to come there to live with him. She replied that she would be willing to discuss the matter with him, but she wanted someone else with her at the conference. Finally, after other letters, complainant, accompanied by a friend, met defendant in Martinsburg on January 18, 1951. Complainant asserted that if defendant wanted to come to live with him in Brunswick, it would be all right. Defendant testified that she asked him if he would be willing to quit seeing Charlotte Worgan, and he refused to discuss that subject with her and refused to apologize for his past conduct. She further testified that he never made any further effort toward reconciliation.

The chancellor found that complainant was not repentant and had not made a sincere effort to effect a reconciliation. He

was of the opinion that complainant made his offer, not with an earnest hope that it would be accepted, but to improve his legal position so that he might avoid paying for his wife's support. "In view of his studied coldness," the chancellor said, "I cannot find that the husband's course of conduct was such as to hold out any hope of success, or to place upon his wife a legal obligation to accept the offer. His policy seems to have involved no effort to conciliate and reassure his wife by an expression of regret for his past misconduct, which has been judicially determined, and by assurances that he would treat her properly in the future."

For those reasons the chancellor passed an order dismissing the bill of complaint. It was from that order that complainant appealed to this Court.

It is an established rule in Maryland that where one spouse, after deserting the other without justification, repents and proposes to renew cohabitation, and the other refuses, the one refusing thereupon becomes guilty of desertion, provided that the offer to return is made in good faith and is free from unreasonable qualifications and conditions, and is sincerely intended to be carried out in accordance with the proper performance of the duties and obligations of matrimonial cohabitation. The law encourages estranged spouses to reconcile their differences and to resume marital relations, and so it is a general rule that before desertion has ripened by the passage of the statutory period of time into a cause for an absolute divorce, the duty rests upon each spouse to accept any offer made in good faith by the other to resume suspended cohabitation, if it appears with reasonable certainty that such offer may be accepted without any reasonable sacrifice of self-respect, health, safety, or comfort. *Wise v. Wise,* 159 Md. 596, 152 A. 230; *Simmont v. Simmont,* 160 Md. 422, 432, 153 A. 665; *McClees v. McClees,* 162 Md. 70, 74, 75, 158 A. 349; *Kirkwood v. Kirkwood,* 165 Md. 547, 551, 552, 170 A. 180; *Pitts v. Pitts,* 181 Md. 182, 190, 29 A. 2d 300; *Zukerberg v. Zukerberg,* 188 Md. 428, 53 A. 2d 20; *Hokemeyer v. Hokemeyer,* 194 Md. 223, 71 A. 2d 15.

In *Ford v. Ford,* 143 Mass. 577, 10 N. E. 474, 476, where the Supreme Judicial Court of Massachusetts had under con-

sideration a suit for a divorce on the ground of desertion, Justice Holmes said in the opinion of the Court:

> "It is true that there are some English cases which seem to establish that, under some circumstances, a justifiable refusal by a wife to receive her husband back after he has deserted her will not stop the running of the statutory time. * * * But these cases arose under a statute which gives a wife a right to obtain a divorce for adultery only when coupled with desertion without reasonable excuse for two years or upwards. They only decide that a wife's refusal to receive her husband back, unless he will abandon an adulterous connection in which he is still persisting, will not prevent the running of the two years. To hold otherwise would make the statute useless in the most aggravated cases, and no general conclusion can be drawn from such decisions."

We follow the generally accepted rule that where a spouse guilty of desertion offers in good faith, before the expiration of the statutory period of desertion, to resume the marital relationship, the continuity of the period of desertion is interrupted and there can be no divorce, unless the separation was due to the misconduct of the spouse offering the reconciliation and such misconduct still continues. During the statutory period, the door of repentance and return is kept open; and if a party guilty of desertion makes an offer to return in good faith, the circumstances may be such as to make the deserted party the offender from that time forth. *Crickler v. Crickler,* 58 N. J. Eq. 427, 43 A. 1064; *Albee v. Albee,* 141 Ill. 550, 31 N. E. 153, 157; *Ogilvie v. Ogilvie,* 37 Or. 171, 61 P. 627. On the other hand, it has been held in a number of cases, although it is not necessary to hold in the present case, that a spouse who is guilty of desertion cannot deprive the deserted spouse of the right to a divorce by overtures of reconciliation made after the statutory period of desertion has elapsed and the deserted spouse is entitled to an absolute divorce. *Wright v. Wright,* 81 Fla. 456, 87 So. 156,

18 A. L. R. 627; *Tipton v. Tipton,* 169 Iowa 182, 151 N. W. 90, 96; *McKay v. McKay,* 172 Ark. 918, 290 S. W. 951.

In this case defendant did not press the point that complainant made his offer of reconciliation after her right to a divorce accrued. In Maryland, a court of equity may decree a divorce *a vinculo matrimonii* when the court is satisfied that the party complained against has abandoned the party complaining, and such abandonment has continued uninterruptedly for at least 18 months, and is deliberate and final, and the separation of the parties is beyond any reasonable expectation of reconciliation. Code 1951, art. 16, sec. 33. The West Virginia statute provides that a divorce from the bond of matrimony may be decreed to the party abandoned, when either party wilfully abandons or deserts the other for two years. West Va. Code 1955, sec. 4704. The record in the instant case indicates that when complainant made his offer of reconciliation, he had deserted his wife more than 18 months, but less than two years.

In any event, a husband who has deserted his wife, as in the case before us, must, in good faith, in a conciliatory manner, and without unreasonable conditions, invite his wife to live with him before he can charge her with desertion. His invitation must have at least the appearance of sincerity, must manifest a real desire for his wife's return, and must not be made simply for the purpose of laying a foundation for a suit for divorce. *Merritt v. Merritt,* 85 N. H. 210, 155 A. 692, 76 A. L. R. 1019; *McLemore v. McLemore,* 173 Miss. 765, 163 So. 500.

*Zukerberg v. Zukerberg,* 188 Md. 428, 53 A. 2d 20, illustrates the strictness of this rule. In that case the Circuit Court No. 2 of Baltimore City had ordered the husband to pay his wife alimony, and thereby had adjudicated that he was guilty of desertion. Subsequently the husband filed a suit for divorce, alleging that he had made his wife offers of reconciliation, but she had refused them. He claimed that he had done everything possible to effect a reconciliation. He said that he had written his wife a number of letters, had called her on the telephone, and had called to see her on a number of occasions. He said that he had rented an apart-

ment on Eutaw Place and that he had pleaded with her to live with him. He said that he also told her that if that apartment was not suitable for her, she could select some other apartment. In view of that forceful testimony, the chancellor granted him a divorce. The Court of Appeals, however, reversed the decree and dismissed the bill. We found that the evidence was not fully convincing that the husband had a real desire for his wife's return and that his offer was absolutely sincere. We took into consideration the fact that his wife had shown (1) that the apartment on Eutaw Place was in an undesirable neighborhood, and that he owned a home on Garrison Avenue which was in a much better neighborhood and completely furnished; (2) that when she told him that it was necessary for her to undergo a tonsil operation and asked him to pay the doctor's bill, he refused to do so and said that she should pay it out of her alimony; and (3) that he had transferred 32 properties to his brother presumably with the object of keeping her from having an interest in his real estate.

In the present case the husband urged that he had done all that he should be required to do to effect a reconciliation and thereby entitle him to a divorce. However, he did not show that he regretted his misconduct. On the contrary, his wife testified: "I asked him if he had any apology to offer me and he said he had none." He admitted that he had never phoned to his wife, and had never sent her a present of any kind. When he was asked whether he had ever made any effort to recourt his wife to have her come back to him, he stated, "Only the letter writing." The record shows that he wrote those letters in business-like language. He kept carbon copies, and sent the letters by registered mail. The chancellor was convinced that those letters did not show that complainant sincerely desired to renew cohabitation. Moreover, defendant averred (1) that she would have accepted her husband's offer of reconciliation if he had made her a promise to stay away from Miss Worgan, but (2) that he had refused to make such a promise. Therefore, she was not convinced that he really wished her to live with him. She suspected that his

real motive was to lay a foundation for a divorce so that he could get relieved of the order for her support.

We have not overlooked the fact that, before the exchange of letters, defendant locked her husband out of her apartment in Martinsburg and called a police officer to take him away from her door. But that fact is not enough to change our opinion of the case. The original dispute of the parties was heard and considered by the Circuit Court of Berkeley County, West Virginia, and that Court decided that the husband was at fault, and ordered him to pay his wife for her separate maintenance. The husband had retained a key to her apartment, and it was only natural that she was greatly alarmed when he tried to enter the door after the Court had decided the case.

It is true that complainant testified that he had not been keeping company with Miss Worgan, and that Miss Worgan swore that she did not even know complainant. However, Judge Rodgers stated in a deposition introduced in the Court below: "The evidence of his misconduct with this lady was not essential to the defense and I made no finding of fact in rendering my opinion in the matter, but merely held that the plaintiff was not entitled to the relief for which he prayed and that the defendant in that suit was entitled to support." The decision of the Court in that original case was *res judicata* of the matrimonial fault of the husband.

Moreover, the chancellor in the Court below had the advantage of seeing and hearing the witnesses and observing their demeanor on the stand. It is an accepted rule that on an appeal from a court of equity, the Court of Appeals will not reverse the chancellor's findings of facts, based upon evidence taken in open court, unless such findings are clearly unwarranted by the evidence. *Lickle v. Lickle,* 188 Md. 403, 52 A. 2d 910; *Brown v. Brown,* 204 Md. 197, 212, 103 A. 2d 856. We cannot hold that the decision of the chancellor in this case is clearly unwarranted by the evidence. The evidence fails to show that the husband was willing to make the concessions which a just man ought to make to induce his wife to forgive him and, upon her refusal of his overtures, to shift to her the blame for the continuance of the separation.

Finally, we pass to complainant's alternative contention that he and his wife had separated voluntarily. There is no question that the order of the Circuit Court of Berkeley County, West Virginia, requiring complainant to make payments to his wife for her maintenance was a judicial determination that he had abandoned her without just cause. That decision established the fact that the separation of the parties was not a voluntary separation. As this Court said in *Benson v. Benson,* 204 Md. 601, 105 A. 2d 733, the word "voluntary" signifies a willingness and a willing concert in the doing of the act.

Complainant suggested that while the separation was originally an involuntary one, it was converted into a voluntary one by the letter which his wife sent him in January, 1952, requesting him to come and get his clothes and other things. He suggested that his wife indicated by this request that she voluntarily agreed to the separation. There is no merit in this contention. Defendant stated in that letter that she made the request because she was getting ready to move and did not want to be burdened any longer with her husband's clothing. As defendant swore that she would never return to her husband unless he made a promise to quit seeing Miss Worgan, it is entirely clear that the separation never became a voluntary one.

For the reasons stated we must affirm the order of the chancellor dismissing the bill of complaint.

*Order affirmed, with costs.*