# GANLEY *v.* GANLEY

[No. 92, September Term, 1957.]

*Decided December 20, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *Frank Vanderhoof* and *John J. O'Brien* for the appellant.

*Vivian V. Simpson,* with whom were *Joseph B. Simpson, Jr.,* and *Simpson & Simpson* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

A wife sued for divorce charging desertion and the husband filed a cross-bill on the same ground. The Chancellor found for the husband and granted the prayers of his cross-bill, but awarded the wife custody of a child and $45.00 per month for its support. The appeal challenges the correctness of the finding, which was based on testimony taken before an examiner. The award of custody and support is not challenged.

The parties were married August 16, 1951, and separated November 26, 1953, when the child was one year old. The wife was a color designer, earning about $5,000.00 a year; the husband was a policeman, earning about $3,800.00 a year. The wife also owned some rental properties, and the house in which they were then living. The married life was not harmonious. After a quarrel on the date mentioned he took all his clothing and left. She testified the quarrel was due to the fact he had collected some of the rent on her property without her knowledge, and when she demanded the money, he told her he had spent it for a rifle. He admitted that this was true. He testified she said: "You are gonna get out", and started collecting his clothes. She admitted that she "helped him". In fact she made a list of what he took. She denied "at this point" that she ordered him out of the house, but admitted she did not try to stop him. No one else was present at the time. She testified she expected him to return, as there had been a previous separation in March, 1953, that lasted about two weeks, after which he returned. She continued to live in the house until February, 1954, when she went to live with her mother. She testified he made no offer of reconciliation until shortly before the bill was filed on July 14, 1955. However, he testified that on several occasions in 1954 he offered to return. "I talked to her and asked her and she said it wasn't any use. I said, 'Maybe things will be different'. She said 'no'. I said I would quit my job and she said 'no'." One of the causes of their quarrels had been on account of his night work on the police force. Another bone of contention was over the religious upbringing of the child. She was a Methodist and he was a Catholic. As the Chancellor noted, she was "extremely arbitrary" in

granting visitation privileges to the husband after the separation. In September, 1954, he talked to her about reconciliation and "She said it wasn't any use talking about it; we tried it and it wouldn't work." The wife admitted that in September, 1954, she refused to return to her husband, and that when she filed a suit for maintenance and support about that time she had testified "I said it would never work, I knew it couldn't possibly". Her mother also testified that her daughter had told her that the husband had tried to reconcile their differences and that "She didn't intend to go back to him." It was not denied that the wife had consulted counsel about a divorce a few months before the last separation.

Although we cannot find that the disagreements between the parties before the separation, including an incident in which she threw a flowerpot at him and he struck her, were serious enough in character to justify his leaving, we find no error in the Chancellor's finding that the husband's offers of reconciliation were made, and that they were *bona fide.* Cf. *Hite v. Hite,* 210 Md. 576. There is no evidence at all that the wife ever made any offers. The facts of the separation, and its continuance for the statutory period, were corroborated by the testimony of other witnesses. Without further narration of the testimony we think it was sufficient to support the decree.

*Decree affirmed, costs to be
paid by the appellee.*