## HOOPER *v.* HOOPER

[No. 118, September Term, 1960.]

*Decided January 10, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*David A. Rosenberg* and *Morton H. Perry,* for appellant.

*Isidor Roman,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

In this case Judge Manley, sitting in the Circuit Court No. 2 of Baltimore City, entered a decree granting a divorce *a mensa et thoro* to the husband on the ground of desertion, and the wife appeals. The appellant claims (a) that the desertion was by the husband and not by her; and (b) that she made an offer of reconciliation which he refused.

This suit originated as one concerning the custody of the children of the parties, one of whom has since come of age, but an amended bill was later filed by the husband seeking a limited divorce and this appeal brings under attack only that portion of the decree granting a divorce and not the awards of custody. There were also two other suits between the parties, one of which was brought by the wife for permanent

alimony, and the other of which was brought by the husband for the appointment of a receiver to sell or rent a piece of improved real property in Charlestown, Cecil County, owned by the husband and wife as tenants by the entireties. These three suits were consolidated for hearing before Judge Carter in the court above named, and the trial began on February 1, 1960. On that day, following the taking of some testimony and conferences between the court and the parties and counsel, these dispositions were made: (i) the wife's bill for permanent alimony was dismissed without prejudice on motion of her counsel; and (ii) the husband's bill for the appointment of a receiver was dismissed, the court stating his understanding that the wife, as one of the tenants by the entireties, was going to move into the property; and (iii) the custody of the six-year-old son was held *sub curia* pending receipt of a report by the Probation Department, with custody temporarily awarded to the mother.

There had been disputes and disagreements and cessations of marital relations between the parties for some time prior to the proceedings before Judge Carter on February 1, 1960. The place at Charlestown and after December, 1958, the wife's conduct while there had been a major source of contention. Almost immediately after the proceedings before Judge Carter the wife did move to Charlestown, taking the youngest child with her and leaving the husband and the two older sons at what had been the matrimonial domicile in Baltimore. Soon thereafter the husband filed his amended bill by which he sought a divorce based upon the wife's desertion on February 3, 1960, in addition to custody of the minor children. The case came on for hearing on the amended bill before Judge Manley, on April 5, 1960. In his oral opinion he referred to the "many" separations between the parties which had occurred during the course of the marriage. He reviewed briefly the two separations and the intervening temporary reconciliation which had occurred between December, 1958, and February 1, 1960; and he concluded that the last of those separations during that time would not have constituted a cause for divorce for either party, no matter whose version of it was correct.

Judge Manley then thus summarized his views with regard to the ultimate separation which occurred just after the hearing of February 1st:

"Then we come down to the hearing in court, and the next day or so or two after that hearing she packs up and moves to Charlestown. She does take many of their belongings with her. She justified her act in taking some of the things because she said they were given to her as presents. So I would take it from her action on that occasion she was taking everything that would belong to her that she could have any claim to with the idea of from that time on severing the marital relation. I don't believe Judge Carter ordered her to move to Charlestown. No judge would tell a wife to move from the family home and go with one of the children to the summer home in the wintertime knowing that it would be necessary for her husband to remain here in Baltimore because of his employment, and also the boys would have to remain here because they are going to school. I think her action in leaving the home on that occasion did constitute an act of desertion or abandonment. And I suppose she has been probably very happy at the home in Charlestown.

It is a case of incompatibility. It is a case that husband and wife could not get along together. The wife left the husband, in my opinion, not for sufficient legal reasons. The mere fact they are incompatible doesn't give reason for either party to leave the other * * *."

The record, we think, would not support a holding by us that the Chancellor was clearly in error, or indeed in error at all, in reaching the conclusion on the evidence that the wife had deserted the husband without sufficient cause. Hence, this finding affords no ground for reversal. Maryland Rule 886 a; *Lickle v. Lickle,* 188 Md. 403, 409-410, 52 A. 2d 910; *Hite v. Hite,* 210 Md. 576, 585, 124 A. 2d 581; (to cite only a few of many cases).

We have also carefully considered the Chancellor's finding that the wife's efforts to effect a reconciliation were not convincing as to their genuineness; and here, too, we see no basis for holding that he was clearly in error, if indeed in any error, in reaching this conclusion on the evidence before him. Under the authorities just cited, this attack must likewise fail. As to the need for a genuine effort at reconciliation by the deserting party, see such cases as *McClees v. McClees,* 162 Md. 70, 158 A. 349; *Kirkwood v. Kirkwood,* 165 Md. 547, 551-552, 170 A. 180; *Diamond v. Diamond,* 182 Md. 103, 109-110, 32 A. 2d 376; *Hite v. Hite, supra.* Cf. *Nicodemus v. Nicodemus,* 186 Md. 659, 667, 48 A. 2d 442; *Dunnigan v. Dunnigan,* 182 Md. 47, 51, 31 A. 2d 634; *Hokemeyer v. Hokemeyer,* 194 Md. 223, 226-227, 71 A. 2d 15.

*Decree affirmed; costs to be
paid by the appellee.*